**PHILADELPHIA NATIONAL BANK, a National Banking Association,**

v.

**EMPLOYING BRICKLAYERS' ASSOCIATION OF PHILADELPHIA, a Pennsylvania corporation, Bricklayers' Union No. 1 of Pennsylvania of the Bricklayers, Masons and Plasterers International Union of America, an unincorporated association, William C. Boyd, President of Bricklayers' Union No. 1 of Pennsylvania of the Bricklayers, Masons and Plasterers International Union of America, Paul A. Paulson, Daniel J. Walsh, Joseph J. Sperlunto, Eugene B. McGough, Sr., John G. Bowman, R. Walton Struse, Jr., Bricklayers' Local No. 1 of Pennsylvania Welfare Fund, an unincorporated association.**

Civ. A. No. 25253.

United States District Court
E. D. Pennsylvania.

Jan. 14, 1959.

592

Arthur Littleton, John R. McConnell, David W. O'Brien, Morgan, Lewis & Bockius, Philadelphia, Pa., for plaintiff.

John J. O'Brien, Jr., Philadelphia, Pa., for Daniel J. Walsh, Eugene B. McGough, Sr., William C. Boyd, Bricklayers' Union No. 1 of Pennsylvania, etc.

Robert W. Lees, Philadelphia, Pa., for Employing Bricklayers' Ass'n of Philadelphia.

Louis H. Wilderman, Philadelphia, Pa., for Paul A. Paulson, Joseph J. Sperlunto, Bricklayers' Local No. 1 of Pennsylvania Welfare Fund, Bricklayers' Union No. 1 of Pennsylvania, etc.

Herman J. Obert, Philadelphia, Pa., for R. Walton Struse, Jr., John G. Bowman, Bricklayers' Local No. 1 of Pennsylvania Welfare Fund.

EGAN, District Judge.

### Introductory

This is a petition in the nature of an equitable interpleader by the Philadelphia National Bank. The Bank wants to know who may give orders respecting the securities it holds as custodian and who may draw on the funds on deposit with it by the Welfare Fund created by the joint action of the Employing Bricklayers' Association of Philadelphia (Association) and the Bricklayers' Union No. 1 of Pennsylvania of the Bricklayers, Masons and Plasterers International Union of America. The area covered generally is the Delaware Valley west of the river. Negotiating Committees for the Employers' Association and the union bricklayers worked out the terms. The agreement itself was signed by the union's executive officers for the union. The original agreement was dated as of the first day of August 1949 and was thereafter amended from time to time on May 1, 1951 and August 5, 1952, and as of October 1, 1955. Four trustees were named, two by each side. There is no question about the two trustees named by the Association who are R. Walton Struse, Jr. and John G. Bowman. The sole controversy revolves about who shall represent the employees as trustees of the Fund.

### Jurisdiction

While the complaint takes the form of an equitable interpleader proceeding under F.R.Civ.P. Rule 22(1) 28 U.S.C.A., jurisdiction is based on the fact that this is a controversy arising under Section 302 of Title III of the Labor-Management Relations Act of 1947, 29 U.S.C.A. § 186. That section, insofar as it is pertinent, reads as follows:

"(a) It shall be unlawful for any employer to pay or deliver * * * any money * * * to any representative of any of his employees * * *

"(b) It shall be unlawful for any representative of any employees * * * to receive or accept * · * from the employer of such employees any money * * *

"(c) The provisions of this section shall not be applicable * * (5) with respect to money * * * paid to a trust fund * * * for the sole and exclusive benefit of the employees of such employer, and their families and dependents * * *provided*, That (A) such payments are held in trust for the purpose of paying, * * * for the benefit of the employees, their families and dependents * * * unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of the employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within in a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office * * *

* * * * * *

"(e) The district courts of the United States * * * shall have

jurisdiction, for cause shown * * to restrain violations of this section * * * ".

There is no doubt that this Court has jurisdiction, under the section just quoted, to restrain disbursements of moneys of the Welfare Fund by unauthorized persons. See, In re Bricklayers' Local No. 1 of Pennsylvania Welfare Fund, D.C.E.D.Pa.1958, 159 F.Supp. 37, decided by my learned colleague, Judge Clary, on February 18, 1958. See also President Judge Hagan's opinion in the same case in the State Court, 1957, 14 Pa. Dist. & Co.2d 468.

### The Facts

The defendant, William C. Boyd, was elected president of the local union for a one-year term from January 1, 1958. He has twice before been elected president since the creation of the Welfare Fund in 1949. On July 8, 1958 Boyd gave written notice, effective July 13, 1958, to the defendant, Paul A. Paulson, that he was removed as a trustee of the Welfare Fund and on the following day, July 14, 1958, he appointed the defendant, Eugene B. McGough, Sr. to replace him, giving appropriate notice as required by the trust instrument to all necessary parties. Thereafter, on July 30, Mr. Boyd gave written notice to the Bank as depository of the cash and custodian of the securities of the Welfare Fund that Mr. Paulson had been removed as trustee and that Mr. McGough had been appointed and was now qualified to serve with Daniel J. Walsh as trustees of the Fund representing the union employees. Copies thereof were also sent by Mr. Boyd, as head of the local union, to all interested parties.

Meanwhile, on July 16, 1958, the Arbitration Committee, also known as the Negotiating and the Conference Committee of the local union, designated Joseph J. Sperlunto to succeed Mr. Walsh, as trustee, the latter having been removed by the Conference Committee as a union trustee on the Welfare Fund. Thus Mr. Boyd, as head of the local union, contended that Walsh and McGough were the properly appointed and qualified union trustees, while the Welfare Fund itself and the Conference Committee of the local union insisted that Messrs. Paulson and Sperlunto were the duly elected and qualified trustees. To protect itself from an illegal dissipation of the Welfare Fund's assets, the Bank instituted the present proceeding.

The Bank wrote to Mr. Boyd, as president of the union, asking by what authority he took the action that he did. Mr. Boyd replied by letter dated August 5, 1958, reading as follows (Ex. PNB 12):

"Mr. Frank E. Beck
"Philadelphia National Bank
"Philadelphia 1, Pennsylvania.

"Dear Mr. Beck:

"In reply to your letter of July 31, 1958, I wish to inform you that under Article 16, Section 3 of the Constitution of the Bricklayers' Union No. 1 of Pennsylvania no member of this Union shall hold two offices at the same time.

"Paul Paulson was in violation of the aforementioned provision of the Constitution and I therefore removed him from the office of Welfare Trustee. Subsequently, I appointed Mr. Eugene B. McGough in Mr. Paulson's place. I did this in accordance with Article 24 of the Constitution of Bricklayers' Union No. 1 of Pennsylvania which authorizes me to appoint any member of the Union as an officer to fill a vacancy.

"Further, I wish to inform you that under Article 24 of the Constitution of the Union, the president has the power to appoint all special committees. Since the office of Welfare Fund Trustee is not specifically mentioned as one of the offices of the Union, the office therefore, comes within the definition of those offices that are created by the power of the president to appoint special committees.

"If there is any additional information that you require, please

communicate with me at your convenience and I will be pleased to supply it.

"Finally, I have herein enclosed the signature cards for Daniel J. Walsh and Eugene B. McGough, the Union's lawful representatives on the Board of Trustees of the Welfare Fund."

We are thus confronted with a situation where the president of the union, under his purported power, dismissed Paulson as a trustee and appointed McGough as his successor, and the Conference Committee of the local union, under its asserted power, dismissed Walsh as a trustee and appointed Sperlunto as his successor.

The record shows that the trustees appointed by the Association of employers have always recognized Paulson and Sperlunto as the regularly constituted trustees for the local union during the period of this controversy.

The litigation here was precipitated when the rival factions in the local union were unable to settle their differences and Messrs. Struse, Bowman, Paulson and Sperlunto, as Welfare Fund trustees, attempted to transfer $24,000 from the general fund to a special fund at the Bank, which could be withdrawn on the sole signature of Andrew J. Cromwell as Welfare Agent. This was done in anticipation of possible litigation so that Cromwell could meet proper claims of beneficiaries, salaries of employees, rent and overhead during the period of the litigation. The Bank declined to make the transfer and filed this complaint. The named gentlemen, as Welfare trustees, then opened a special account at the Bryn Mawr Trust Company, from which such claims and charges are being met on the authorized signature of Mr. Cromwell as Welfare Agent. Meanwhile, all counsel stipulated that until this litigation is ended, Messrs. Struse and Bowman, as trustees and as sole signatories, may jointly draw on the general fund at the plaintiff Bank during the period of this controversy.

The union local and Messrs. Walsh and McGough filed a joint answer to the complaint in which they support the position taken by Mr. Boyd. On the other hand, Messrs. Struse, Bowman, Paulson and Sperlunto, as Welfare Fund trustees, filed a joint answer in which they say— (1) that Mr. Boyd, as union local president, has no power to name and replace union nominees on the Welfare Fund and (2)· that a union designated Welfare Fund trustee is not, as such, an officer of the union and is not disqualified from acting as a Welfare Fund trustee by virtue of 302(b) of Labor-Management Relations Act, 29 U.S.C.A. § 186(b) which prohibits employee representatives from receiving money from an employer.

We shall take up the second defense first. It has already been decided adversely to the contention of the union local and Messrs. Walsh and McGough. United Marine Division. v. Essex Transportation Co., 3 Cir., 1954, 216 F.2d 410. There, in deciding that the Welfare Fund is a separate entity and that its trustees are not officers of the union, Judge Goodrich, speaking for the Court, said (at page 412):

"These trustees were not, in our judgment, representatives of the employees. They were trustees of a welfare fund. It is true that they were chosen half and half by the employers' association and this union. But we think that when set up as a board, as they were in this case, these individuals are not acting as representatives of either union or employers. They are trustees of a fund and have fiduciary duties in connection therewith as do any other trustees. The terms under which they act were carefully spelled out."

We believe this to be true even though Paulson and Sperlunto are members of the Arbitration or Conference Committee whose function it is under the union local's constitution to meet and negotiate on behalf of the union membership with employers in matters pertaining to wages, hours and conditions of work.

In his brief, counsel for the union local and Messrs. Walsh and McGough concedes that "the office of Welfare trustee is not specifically mentioned in the union constitution." He then goes on to say, "Absent a specific method for the designation of a Welfare trustee, it is apparent that the president has not only the right but the duty to preserve the Welfare Trust by appointing two qualified members of the union to serve as a special Committee on the Board of Trustees."

The trust instrument does not specifically say that the union trustees shall be named by the president or the Conference Committee. But it does say they shall be named by the union.

The trust agreement is made between the Employing Bricklayers' Association and the union local. It is signed not by the Conference Committee but by the officers of the union on its behalf (Ex. PNB 15).

Paragraph "First" of the agreement provides:

"The Association and the Union Local 1 shall, immediately upon the execution of this instrument, each designate two trustees and forthwith send written notice to the other setting forth the names of its designated trustees * * *."

Paragraph "Second (a)" provides:

"The Association and Union Local 1 shall each have the right from time to time, upon the giving of at least five days' notice in writing to the other party, to remove any trustee or any successor trustee designated by them * * *."

Paragraph "Second (c)" provides:

"In the event of the resignation, death, disqualification or legal disability of a trustee designated pursuant to the provisions hereof, the party which designated such trustee shall promptly designate a successor to such trustee * * *."

The agreement, therefore, does contain specific provisions as to who shall have the right to designate and who shall have the right to remove union trustees, and who shall have the right to designate their successors, namely, the union itself.

The union constitution and by-laws do not contain any reference to the Welfare Fund trustees because the Welfare Fund is a rather modern development. The language defining the powers of the officers and of the Conference Committee and the Executive Committee is not sufficiently broad to include the appointment of Welfare trustees. Furthermore, considering the history of these Welfare Funds, it is not desirable to construe the constitution of the union, in the absence of a clear provision to that effect, as vesting in the officers of the union the power to appoint and remove the trustees of the Welfare Fund at will.

Of course, if the union membership, at a duly constituted meeting, should vest that power in some representative of theirs, a different question would be presented.

In the absence of a clear-cut provision in the union constitution giving its officers, or any one or more of them, the power to designate the trustees of the Welfare Fund, that power remains in the union membership. It must be remembered that the union constitution under consideration here, like our Federal Constitution and many of our State Constitutions, defines delegated powers, and such powers as are not delegated remain in the union membership.

It is argued to the contrary that this view conflicts with the interpretation put on the agreement by the parties to it. Thus the parties have stipulated of record that from the beginning, except for the present controversy, the union-appointed trustees of the Welfare Fund have always been designated by the Conference Committee; and that the interpretation given by the parties themselves to the contract shown by their acts should be adopted by the Court. The weakness of this argument is (1) that the trust

instrument says the union shall designate them, and (2) that the union itself, namely, the membership, at no time designated the Conference Committee as the proper Committee to make the appointments. The union as a party to this instrument never did, so far as this record shows, interpret the contract and adopt a resolution which would bargain away, or give away, its power to designate these trustees.

■ Furthermore, this is not a private contract between private parties where their own interpretation governs. It is in the nature of a public contract permitted, if not actually enjoined, by law for the benefit of the employees and their dependents. The employers have no interest in the Fund except to see that it is properly administered, and for this purpose they name co-trustees.

■ Since this is a trust conforming to the provisions of the Labor-Management Relations Act of 1947, 29 U.S.C.A. § 186, there is no restriction on who can serve as a labor trustee of this Fund, if such trustee is properly designated by the union itself. While it might be desirable that the executive officers of the union should not act as officers of the Welfare Fund because it might lead to abuses, such as political pressure and favoritism, there is nothing in the Act which prohibits such officers from acting as trustees of the Fund. Perhaps Congress had in mind the fact that as trustees they would be subject to the high standards applicable to fiduciaries under the general law of trusts.

■ Because we have arrived at the conclusion that none of the purported labor trustees, either those named by the Conference Committee or the president, are in fact the proper appointees of the union and that their offices are vacant, we believe that this Court has inherent power to appoint trustees to serve until such time as the membership of the union itself elects new trustees.

However, we shall not exercise this power because of the stipulation referred to above which, with the approval of the Court, gives certain of the trustees permission to operate the Welfare Fund until this matter is finally determined.

The union constitution provides for regular meetings of the members to be held Friday evening of each week, presumably because it is a most convenient time.

■ Accordingly, we shall retain jurisdiction and enter an interim order directing the union to hold a meeting for the purpose of electing two trustees of the Welfare Fund who shall qualify and serve with the employer trustees who are now in office and their successors. The meeting shall be held at a convenient time, not less than 20 or more than 60 days from the date of this order. The time, place and purpose of the meeting shall be advertised in the three newspapers of general circulation in the City of Philadelphia and a copy of the advertisement shall accompany the notice of the meeting sent to each member of the union, which latter should state the special purpose of the meeting. At this meeting, all four of the present purported union trustees—defendants in this case—may be nominated for the office of trustee of the Welfare Fund. Nominations from the floor shall also be permitted. Each member of the union shall be entitled to vote for two and the two nominees receiving the highest number of votes shall be the designated trustees and shall be duly certified as such.

The person who acts as secretary of the meeting shall file, under oath, with the Court, a written return certifying as to the list of candidates and the number of votes cast for each, the fact that the notices were sent to the membership, that the meeting was advertised and attach proof thereof, and a copy of the advertisement and the notice.

Counsel shall submit an appropriate form of order.