[L. A. No. 25484. In Bank. Nov. 6, 1959.]

JACK COX, as Secretary etc., et al., Petitioners, v. SUPERIOR COURT OF SAN BERNARDINO COUNTY, Respondent; FRANK A. CALHOUN et al., Real Parties in Interest.

*Assigned by Chairman of Judicial Council.

Garrett, Richman & Nicoson and Lionel Richman for Petitioners.

No appearance for Respondent.

Edgar C. Keller for Real Parties in Interest.

PETERS, J.—Petitioners seek a writ of prohibition to compel the respondent court to desist from further proceedings in the trial of issues raised by the second amended counterclaim and cross-complaint brought against petitioners by the real parties in interest.

Petitioners Cox and Pollock brought representative actions on behalf of two painters' unions (Orange Belt District Council of Painters No. 48 and Painters Local Union No. 775) against Frank A. Calhoun, individually, and Frank A. Calhoun and Elmer Bickmore, partners, painting contractors, and the real parties in interest herein, for breach of a collective bargaining agreement. The complaint alleged that the defendants had failed to enforce a union shop provision and had failed to make payments in accordance with a trust fund provision contained in the collective bargaining agreement. The defendants filed an answer alleging, among other things, that the part of the collective bargaining agreement establishing the trust fund was illegal in that it violated section 302 of the Labor Management Relations Act (29 U.S.C.A. § 186).[1]

The defendants also filed a counterclaim and cross-complaint, containing six counts. These pleadings alleged that the collective bargaining agreement between cross-complainants and the unions incorporated the provisions relating to the previously existing employees' insurance fund created in 1952, of which the cross-defendants were trustees; that the cross-complainants entered into the agreement under threat by cross-defendants that they would cause cross-complainants' employees to cease working for them; that cross-complainants subsequently discovered that the trust fund was illegal in that it was in violation of section 302 of the Labor Management Relations Act; and that all the parties to the preexisting trust agreement were engaged in an industry affecting commerce within the meaning of the Labor Management Relations Act. The first three counts of the cross-complaint seek return of money the cross-complainants paid into the allegedly illegal trust fund and into a contract administration fund.

The fourth count alleges that cross-defendant Local Union breached its promise to supply men from its hiring hall after they had been requested by cross-complainant.

The fifth count alleges that the cross-defendants, by means of threats and otherwise, induced cross-complainants' em-

[1]Section 302 is a penal statute generally prohibiting payments by employers to employee representatives and the receipt of such payments by the employee representatives. (Sections 302(a) and 302(b).) Section 302(d) makes violations of any of the subdivisions of the section a misdemeanor. Section 302(c) provides for various exceptions to the prohibitions, among which is that payments to an employee welfare and pension trust fund are permitted.

ployees to breach their working agreements with cross-complainants. It is further alleged that disharmony was thus created among cross-complainants' employees and became known to general contractors in the area, and that the latter refused to give painting subcontracts to cross-complainants because of fear that their jobs would become involved in labor disputes.

The sixth count alleges that cross-defendant unions wilfully threatened a general contractor with "labor troubles" if the contractor gave subcontracts to cross-complainants. It is alleged that the contractor understood, and cross-defendants meant, that "labor troubles" meant picketing by cross-defendants to induce other unions to refuse to work on such construction, a "slow down," and generally performing or failing to perform in such a manner that the cost and difficulty of completing the construction would be increased. It is further alleged that this general contractor, because of the cross-defendants' actions, refused to give subcontracts to cross-complainants.

Cross-defendants' demurrers to the counterclaim and cross-complaint, challenging its sufficiency and the jurisdiction of the court, were overruled, the court holding that it had jurisdiction. Petitioners now seek a writ of prohibition to compel the respondent court to desist from further proceedings in the trial of the issues raised by the second amended counterclaim and cross-complaint.

The real parties in interest first contend that the state court has jurisdiction to the exclusion of either the federal courts or the National Labor Relations Board because nowhere in the pleadings are there allegations sufficient to show that their activities affect interstate commerce. The contention is without merit. The second amended counterclaim and cross-complaint alleges that ". . . the said parties to said 1952 Agreement and Declaration of Trust were engaged, and they are now engaged, in an industry affecting commerce within the meaning of the U. S. Labor Management Relations Act, 1947." This allegation avers an ultimate fact rather than a conclusion of law, and as such is sufficient so as to enable us to consider the question of federal preemption. (See *Retail Clerks' Union* v. *Superior Court, ante,* pp. 222, 226 [339 P.2d 839], cert. den. [—— U.S. ——, —— S.Ct. ——, 4 L.Ed.2d 105].)

It is argued that "[t]he parties to the agreement there referred to are not identical with the parties to this action,

but include many contractors and many associations.'' This is probably true. However, the petitioners were parties to the 1952 agreement, as was the Orange Belt Chapter Painting and Decorating Contractors Association of San Bernardino, Inc., in which the real parties in interest are members. Also alleged to be parties are ''individual employers who may subscribe [to the agreement].'' While real parties in interest may not have been original signers of the 1952 agreement, they became a ''party'' upon subscribing to it, which, since they were making contributions to the welfare fund, it may be assumed that they did.

In addition, although the real parties in interest were not original signatories to the 1952 agreement, they signed the 1955 collective bargaining agreement which incorporated the terms of the 1952 agreement.

■ Even if the allegations were not sufficient to show that the real parties in interest are engaged in interstate commerce, we would nonetheless be able to consider whether or not section 302 is applicable to the first three causes of action. In *Sheet Metal Contractors Assn.* v. *Sheet Metal Workers Intl. Assn.*, 248 F.2d 307, cert. den. 355 U.S. 924 [78 S.Ct. 367, 2 L.Ed.2d 354], it was held, at page 311, that the basis of jurisdiction under section 302 of the Labor Management Relations Act is simply that the employees whose representatives are prohibited from receiving money from employers be employed in an industry affecting commerce. The court said: ''The statutory test is not as to how much interstate business any particular employers may do.''

As pointed out above, the petitioners here were parties to the 1952 agreement and declaration of trust. They therefore come within the allegation here under discussion. At least some of the employees of the real parties in interest are members of the petitioners' organizations and thus are ''employees who are employed in an industry affecting commerce.'' Section 302 is therefore applicable.

■ Before reaching the question of whether these causes of action are preempted, another preliminary point must be discussed. The real parties in interest contend that this court was without jurisdiction to consider the petition for hearing filed by the petitioners, for the reason that the decision of the District Court of Appeal denying without opinion the petitioners' petition for a writ of prohibition had not become final when the petition for hearing was filed. The decision

of the District Court of Appeal was filed on the 5th of June and the petition for hearing was filed on the 10th of June.

This contention is without merit. Rule 24(a) of the Rules on Appeal provides, in part, that: "A decision of a District Court of Appeal becomes final as to that court 30 days after filing, except that the denial without opinion of a petition for a writ within its original jurisdiction without issuance of an alternative writ or order to show cause becomes final as to that court immediately after filing."

Petitioners first contend that the trial court is without jurisdiction over the first three counts because section 302(e) of the Labor Management Relations Act vests exclusive jurisdiction to try cases arising under section 302 in the federal courts. Section 302(e) provides that: "The district courts of the United States and the United States Courts of the Territories and possessions shall have jurisdiction, for cause shown, and subject to the provisions of section 381 of Title 28 (relating to notice to opposite party) to restrain violations of this section, without regard to the provisions of section 17 of Title 15 and section 52 of this title [Clayton Act], and the provisions of sections 101-110 and 113-115 of this title [Norris-La Guardia Act]." (29 U.S.C.A. § 186(e).) The petitioners argue that "a reading of Section 302 makes it clear that it was intended by Congress to vest general equitable jurisdiction in federal courts over the administration of trust funds created under the provisions of that section."

The contention is without merit. ▓▓ In *McCarroll* v. *Los Angeles County etc. Carpenters,* 49 Cal.2d 45 [315 P.2d 322] (cert. den., 355 U.S. 932 [78 S.Ct. 413, 2 L.Ed.2d 415]), this court pointed out the well settled rules applicable in the determination of whether or not a state court has concurrent jurisdiction with the federal courts. We said, "As Mr. Justice Bradley stated in *Claflin* v. *Houseman,* 93 U.S. 130, 136 [23 L.Ed. 833], '[I]f exclusive jurisdiction [in the federal courts] be neither express nor implied, the State courts have concurrent jurisdiction [to enforce federal rights] whenever, by their own constitution, they are competent to take it.' Concurrent jurisdiction exists 'where it is not excluded by express provision, or by incompatibility in its exercise arising from the nature of the particular case.' (See *Gerry of California* v. *Superior Court,* 32 Cal.2d 119, 122-123 [194 P.2d 689].)" (49 Cal.2d at page 59.) (See also *Grunwald-Marx, Inc.* v. *Los Angeles Joint Board, ante,* pp. 568, 581 [343 P.2d 23].)

■ Section 302 does not expressly oust the state courts of jurisdiction. Nor can such an ouster be implied. There is even a conflict in the lower federal courts as to whether or not section 302(e) vests those courts with broad equity powers over the administration of welfare funds established in industries affecting interstate commerce. *Copra* v. *Suro*, 236 F.2d 107, relied upon by petitioners, indicates, without so holding, that 302(e) does create such broad jurisdiction. (See also *In re Bricklayers' Local No. 1 of Pa. Welfare Fund*, 159 F.Supp. 37; *Philadelphia Nat. Bank* v. *Employing Bricklayers' Assn.*, 169 F.Supp. 591.) On the other hand, other cases hold that section 302(e) grants no jurisdiction at all and merely removes the bars of the federal anti-injunction statutes where the courts otherwise have jurisdiction. (*Sanders* v. *Birthright*, 172 F. Supp. 895; *Moses* v. *Ammond*, 162 F.Supp. 866; see also 72 Harv. L. Rev. 778.) This conflict is important. It is rather difficult to find an implication of *exclusive* federal jurisdiction when the federal courts themselves are not clear that section 302(e) grants them any jurisdiction at all. Moreover, if, as we correctly held in *McCarroll*, the clear grant of jurisdiction to federal courts in section 301 over contract violations did not oust the state courts of their jurisdiction, no reason appears why the ambiguous, equivocal language of section 302(e) should have that effect.

Several cases in the state courts have been found which discuss the preemption question. *People* v. *Knapp*, 157 N.Y.S. 2d 820, was a proceeding in which the defendant was charged with contempt for failure to answer certain questions propounded in a grand jury investigation relating to bribery of union representatives. The defendant refused to answer on the ground, among others, that section 302 of the Labor Management Relations Act had preempted state jurisdiction over the subject matter of employer payments to employee representatives in any industry affecting interstate commerce, and that therefore any state statutes on the subject were inoperative. Defendant's contention was rejected, the court holding that there was no evidence that Congress had intended federal jurisdiction to be exclusive. Although the opinion is concerned with the penal portion of section 302, the concurrent jurisdiction position it takes is applicable to a proceeding involving the exceptions to the penal portion.

A contrary result was reached in *Bricklayers' Local No. 1 Welfare Fund*, 14 Pa. D. & C.2d 468. The court held that

section 302(e) grants exclusive jurisdiction over the administration of employee trust funds to the federal courts, relying on the dictum in *Copra* v. *Suro*, 236 F.2d 107. The court also indicated that it thought the inclusion in section 302 of various provisions regarding the administration of trust funds was a manifestation of a congressional intent that federal jurisdiction be exclusive.

As pointed out above, the *Copra* case is in conflict with other federal cases, and, in any event, indicates only that section 302(e) grants the federal courts broad equity powers over the administration of employee trust funds. Nothing in the *Copra* dictum suggests that the federal jurisdiction thus granted is exclusive.

The incorrectness of the Pennsylvania court's conclusions about congressional intent and its fears as to federal-state conflict are persuasively demonstrated by the newly enacted federal legislation pertaining to disclosure of welfare and pension plans (29 U.S.C.A. §§ 301-309), which is not referred to by the parties. These sections provide, in general, for the publication of descriptions and annual reports of welfare and pension plans and for enforcement of the provisions. They also detail the effect of other laws. In the latter regard, section 309(b) provides: "The provisions of this chapter, except subsection (a) of this section, and any action taken thereunder, shall not be held to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of the United States or of any State affecting the operation or administration of employee welfare or pension benefit plans, or in any manner to authorize the operation or administration of any such plan contrary to any such law." (29 U.S.C.A. § 309(b).)

These sections were enacted in August, 1958, and became effective January 1, 1959. (Pub. L. 85-836, § 12, Aug. 28, 1958, 72 Stat. 1002.) They clearly indicate that no preemption of state jurisdiction was intended by Congress. Indeed, they clearly indicate that federal and state administration of employee welfare and pension plans may overlap.

For the reasons stated above, it must be held that the federal court's jurisdiction under section 302, if any it has, is not exclusive, and that state courts may entertain suits arising under that section. It is unnecessary to now determine what law must be applied. This disposes of petitioners' contentions in reference to the first three causes of action.

Petitioners next contend that fifth and sixth counts of the counterclaim and cross-complaint allege conduct which is "arguably" an unfair labor practice, and therefore the National Labor Relations Board has exclusive jurisdiction. The petitioners rely on the following language in *San Diego Building Trades Council* v. *Garmon*, 359 U.S. 236 [79 S.Ct. 773, 780, 3 L.Ed.2d 775] : "When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."

█ We have recently had occasion to comment on the *Garmon* case in *Grunwald-Marx, Inc.,* v. *Los Angeles Joint Board, ante,* p. 568 [343 P.2d 23]. In discussing how the term "arguably" was to be interpreted, it was stated at page 584: ". . . certainly by using the term 'arguably' Mr. Justice Frankfurter did not mean to imply that a litigant can cause a state court to lose jurisdiction merely by the assertion that the particular activity is either protected by section 7 or prohibited by section 8. He must have meant 'susceptible of reasonable argument.' " Therefore, in reviewing the petitioners' contentions that certain activity constitutes unfair labor practices, we must determine whether the applicability of section 7 or section 8 to that activity is "susceptible of reasonable argument." We now turn to the specific activities alleged to be within the exclusive jurisdiction of the National Labor Relations Board.

█ The fifth count, it will be recalled, alleged that employees of the real parties in interest breached their working agreements with the latter because of the threats and other persuasion of the petitioners. It is also alleged that this disharmony became known to general contractors in the area, who then refused to give painting subcontracts to the real parties in interest because of fear that their jobs would become involved in labor disputes.

The petitioners assert that these allegations set out a violation of section 8(b)(1), which provides, in part, that it is an unfair labor practice for a labor organization or its agents "to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: *Provided,* That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein." (29 U.S.C.A. § 158(b)(1).)

Section 157 provides that: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title." (29 U.S.C.A. § 157.)

The fifth count does not allege the purpose for which the petitioners induced employees to breach their employment contracts, nor have the petitioners indicated what are the employee rights, under section 157, the exercise of which they coerced. In the absence of such allegations, we cannot say that an unfair labor practice has been committed.

The sixth count of the counterclaim and cross-complaint alleged that petitioners threatened a general contractor, Bryant Construction Company, that if it gave painting subcontracts to the real parties in interest, there would be "labor troubles" on the job. Further, that the general contractor understood, as petitioners intended it should, that "labor troubles" meant that the petitioners would picket such construction and induce affiliated labor organizations composed of men of skills other than painting to refuse to work on such construction, would conduct a "slow down," and generally would so perform or fail to perform as to increase the difficulty and cost of completing such construction. It is also alleged that, because of the petitioners' threats, Bryant did not give painting subcontracts to the real parties in interest.

Petitioners assert that the conduct alleged above constitutes either a secondary boycott prohibited by section 8(b)(4) of the Labor Management Relations Act (29 U.S.C.A. § 158(b)(4)), or conduct which is protected by section 7 of the Act (29 U.S.C.A. § 157). In either event, petitioners argue, the National Labor Relations Board has exclusive jurisdiction.

Section 8(b)(4) provides that it is an unfair labor practice for a labor organization or its agents "to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof

is: (A) forcing or requiring any employer . . . to cease doing business with any other person." (29 U.S.C.A. § 158(b) (4).)

The sixth count does not allege a violation of section 8(b) (4)(A). All that appears is that the petitioners threatened a general contractor with "labor troubles" if he gave painting subcontracts to the real parties in interest. No inducement of employees is alleged. Requests and threats addressed directly to a secondary employer are not illegal. (*Carpenters' Union* v. *Labor Board*, 357 U.S. 93, 99 [78 S.Ct. 1011, 2 L.Ed. 2d 1186] ; *National Labor Relations Board* v. *Business Mach. & Office A., etc. Local 459*, 228 F.2d 553, 559, cert. den. 351 U.S. 962 [76 S.Ct. 1025, 100 L.Ed. 1483] ; *Rabouin* v. *National Labor Relations Board*, 195 F.2d 906, 911; *McCarroll* v. *Los Angeles County etc. Carpenters, supra.*) The Supreme Court said in the *Carpenters' Union* case, ". . . a union is free to approach an employer to persuade him to engage in a boycott, so long as it refrains from the specifically prohibited means of coercion through inducement of employees." (357 U.S. at p. 99.)

 But even if an illegal secondary boycott were alleged, the state court would still have jurisdiction to award damages pursuant to the express authority of section 303(b) of the Act (29 U.S.C.A. § 187(b)). This was conceded by petitioners on oral argument.

 In regard to petitioners' contention that their conduct is protected by section 7 of the Labor Management Relations Act, it is sufficient to say that petitioners have cited no authority in support thereof, nor have we been able to find such authority. It does not follow that because the petitioners' conduct is not prohibited, it is protected.

The petitioners contended in their brief that the fourth cause of action alleged a violation of section 8(b)(2) of the Act. However, it was conceded on oral argument that this cause of action was within state jurisdiction. This concession is in accord with the law. Allegations of a hiring hall agreement, without allegations of its discriminatory operation, are insufficient to state a violation of section 8(b)(2). (*National Labor Relations Board* v. *International Assn.*, 261 F.2d 347, 350; *National Labor Relations Board* v. *Swinerton*, 202 F.2d 511, 514; *Del E. Webb Const. Co.* v. *National Labor Relations Board*, 196 F.2d 841, 845.)

Thus, the trial court correctly ruled that it had jurisdiction of all six counts of the counterclaim and cross-complaint.

The alternative writ of prohibition is discharged and the peremptory writ is denied.

Gibson, C. J., Traynor, J., Schauer, J., Spence, J., McComb, J., and White, J., concurred.