Filed 2/5/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| STEVEN MORA,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>WEBCOR CONSTRUCTION, L.P.,<br><br>        Defendant and Respondent. | A148264<br><br>(Alameda County<br>Super. Ct. No. RG15780062) |

California Labor Code section 226, subdivision (a) (Section 226(a)),[1] requires employers to provide employees wage statements itemizing, among other things, all wages earned, including the hours worked and applicable rates of pay.  Plaintiff and appellant Steven Mora (appellant) contends defendant and respondent Webcor Construction, L.P. (respondent) violated Section 226(a) by failing to list the hours and hourly rate associated with a payment described as "Union Vacation" on his wage statements.  It is undisputed the amounts were payments to a union vacation trust fund authorized by the Labor Management Relations Act of 1947 (LMRA), also known as the Taft–Hartley Act (29 U.S.C. § 141 et seq.).  The trial court sustained respondent's demurrer without leave to amend and we affirm, concluding the payments are not within the scope of Section 226(a).

## BACKGROUND

In July 2015, appellant filed this putative class action in Alameda County Superior Court and, in February 2016, appellant filed a First Amended Complaint (FAC).  The

---

[1] All undesignated section references are to the Labor Code.

FAC alleges violations of Section 226(a) and seeks penalties under the Private Attorneys General Act of 2004 (PAGA) (§ 2698 et seq.). The FAC seeks to allege the claims on behalf of all persons employed by respondent after July 2014.

The FAC alleges appellant was employed by respondent from March 7 through May 14, 2015. Appellant's employment was subject to a collective bargaining agreement (CBA)—the 2014–2019 Laborers' Master Builders Agreement—entered into between respondent and the Northern California District Council of Laborers of the Laborers' International Union of North America;[2] the CBA is attached to the FAC as Exhibit A. Among many other things, the CBA sets forth "wages" applicable to different employment classifications. The CBA also separately requires employers to "pay hourly contributions for each hour paid for and/or worked" to various union trust funds at specified rates, including to the Laborers Vacation Holiday Dues Supplement Trust Fund for Northern California (Union Vacation Trust Fund) at $2.63 an hour effective June 2014.[3]

The FAC alleges that, "[p]ursuant to the terms of the CBA, [appellant] was paid a specific hourly rate of vacation pay for each hour worked," but "the applicable rate of pay and hours for such vacation wages were not identified on the wage statements" he received from respondent. The FAC alleges this was in violation of Section 226(a).

---

[2] While the CBA was signed by the Construction Employers' Association of California, there is no dispute among the parties that respondent is associated with that association and that appellant's employment with respondent was controlled by the terms of the CBA.

[3] The CBA also requires hourly payments at specified rates to eight other union funds, described on a chart as "Health & Welfare," "Retiree Health & Welfare," "Pension," "Annuity," "Training-Retraining/Apprenticeship," "Contract Administration/Market Preservation," "Building Industry Stabilization Fund," and "CEA/Laborers Contract Interpretation and Application Fund." It is unclear whether each represents a separate trust fund, or whether in some instances payments in different categories go to a single trust fund. For example, the CBA references the "Laborer's Pension/Annuity Trust Fund for Northern California," which presumably receives both the "Pension" and "Annuity" payments.

In March 2016, respondent filed a demurrer, arguing the payments at issue were outside the scope of Section 226(a) and, in any event, appellant's claims were preempted by the LMRA. In opposing the demurrer, appellant requested that the trial court take judicial notice of weekly wage statements he received from respondent. The wage statements clarify the nature of appellant's claims.[4] Each wage statement[5] contains a heading on the left side entitled "Current Pay Period," under which are listed three categories: "Regular," "Overtime," and "Union Vacation." On each statement, the "Regular" and "Overtime" lines list hours worked as well as the pay rate for each hour worked, as well as a total amount in a column entitled "Current Amount." On the other hand, the number of applicable hours worked and the applicable hourly rate are not included for the "Union Vacation" line. Instead, there is only a total dollar amount in the "Current Amount" column.

On the right side of each wage statement appears a section entitled "Deductions," which includes three columns: "Deductions Description," "Current," and "YTD Amount." On each wage statement the only listed deduction is described as "Union Vacation," and the amount listed in the "Current" column is always the same as the amount listed for "Union Vacation" in the "Current Pay Period" section. Thus, whatever amounts appellant received in the "Union Vacation" category each month were then deducted from the ultimate payment. Appellant alleges, and respondent does not dispute, that the wage statements list the deductions *after taxes*, meaning that appellant was taxed on the "Union Vacation" payments that were ultimately deducted.

---

[4] The FAC does not contain detailed allegations about the wage statements. Respondent argued below and argues on appeal that the wage statements are not a proper subject for judicial notice. The trial court did not rule on the request for judicial notice in its decision. In any event, and regardless of whether it would be proper to take judicial notice of the wage statements, we consider them on appeal because appellant could amend his complaint to allege the contents of the wage statements, if it would permit him to state a claim.

[5] The final two wage statements are hand-filled forms that look different from the other statements. Appellant focuses on the other eight statements and we do the same.

Appellant's claims in the present lawsuit are based on the failure to state the number of hours and hourly rate for the "Union Vacation" payment category on the wage statements. He contends those payments were part of his wages and, therefore, itemization of the hours and applicable rate was required under Section 226(a). Although the FAC does not expressly so allege, the parties agree and the CBA attached to the FAC makes clear that the "Union Vacation" amounts on the wage statements are payments to a Taft-Hartley trust—specifically, the Union Vacation Trust Fund.

In April 2016, following a hearing, the trial court sustained respondent's demurrer without leave to amend. The court concluded the payments to the Union Vacation Trust Fund were not "wages" within the meaning of Section 226(a), in part because appellant "never had possession or control of these payments, or the right to control them." The court also concluded appellant's claims were preempted by the LMRA because the CBA would need to be interpreted in order to determine "whether and when [appellant] becomes entitled to the hourly payments listed, whether any conditions attach, and when and how such conditions are satisfied."

This appeal followed.

DISCUSSION

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the 'reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded.' [Citation.] It 'is error for a trial court to sustain a demurrer [if] the plaintiff has stated a cause of action under any possible legal theory.' [Citation.] We apply a de novo standard in reviewing the court's ruling sustaining the demurrer." (*Soto v. Motel 6 Operating, L.P.* (2016) 4 Cal.App.5th 385, 389.)

I.  *Legal Background*

A.  *The LMRA/Taft–Hartley Act*

As explained previously, the alleged "wages" respondent failed to itemize on appellant's wage statements were payments to a Taft-Hartley vacation trust fund. The LMRA "prohibits employers from making any payments to representatives of its

4

employees, [but] permits employers and unions to create employer-financed trusts to fund employee benefits for union employees. (29 U.S.C. § 186(c)(5).) These 'Taft–Hartley trusts' are funded by employer contributions, but are operated for the 'sole and exclusive benefit' of the employees. The basis for the payment of benefits must be outlined in a detailed written agreement between the union and the employer (29 U.S.C. § 186(c)(5)(B)), the fund must be subject to an annual audit, kept separate from other union welfare funds, and the trustees of the funds are charged with equally representing the interests of the employer and its employees. (29 U.S.C. § 186(c)(5)(B).)" (*Great-West Life Assurance Co. v. State Bd. of Equalization* (1993) 19 Cal.App.4th 1553, 1558, fn. 2 (*Great-West*); see also *N.L.R.B. v. Amax Coal* (1981) 453 U.S. 322, 328-329 (*Amax Coal*); *Cox v. Superior Court*. (1959) 52 Cal.2d 855, 858, fn. 1.) The fund assets are " 'held in trust,' and . . . administered 'for the sole and exclusive benefit of the employees . . . and their families and dependents. . . .' " (*Amax Coal*, at p. 329.)

The LMRA gives federal courts exclusive jurisdiction to hear "[s]uits for violation of contracts between an employer and a labor organization." (29 U.S.C. § 185(a); see also *Burnside v. Kiewit Pacific Corp.* (9th Cir. 2007) 491 F.3d 1053, 1058–1059 (*Burnside*).) "Congress charged federal courts with a 'mandate . . . to fashion a body of federal common law to be used to address disputes arising out of labor contracts.' [Citations.] As a result of this broad federal mandate . . . , the 'preemptive force of [29 U.S.C. § 185(a)] is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization.' " (*Burnside*, at p. 1059.) Additionally, the LMRA requires preemption of a state law claim "if the resolution of [that] claim depends upon the meaning of a collective-bargaining agreement." (*Detabali v. St. Luke's Hosp*. (9th Cir. 2007) 482 F.3d 1199, 1203.) However, a " 'reference to or consideration of the terms of a collective bargaining agreement is not the equivalent of interpreting the meaning of the terms.' " (*Ibid.*; see also *Burnside*, at pp. 1059–1060.)

5

B.    *Section 226(a)*

Section 226(a) requires employers to "semimonthly or at the time of each payment of wages, furnish each of his or her employees . . . an accurate itemized [wage] statement."  The wage statement must include: (1) "gross wages earned," (2) "total hours worked" except by salaried and exempt employees, (3) "piece-rate units earned," (4) "all deductions," (5) "net wages earned," (6) "the inclusive dates of the period for which the employee is paid," (7) "the name of the employee" and "the last four digits of [the employee's] social security number or an employee identification number," (8) "the name and address of the legal entity that is the employer," and (9) "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." (*Ibid.*)

"The Legislature enacted section 226 to ensure an employer 'document[s] the basis of the employee compensation payments' to assist the employee in determining whether he or she has been compensated properly.  [Citation.]  Section 226 'play[s] an important role in vindicating [the] fundamental public policy' favoring ' " 'full and prompt payment of an employee's earned wages.' " ' " (*Soto*, *supra*, 4 Cal.App.5th at p. 390 (italics omitted).)

Taft-Hartley trusts, such as the Union Vacation Trust Fund at issue in the present case, are expressly addressed in section 227.5, entitled "Annual statement of payments to employee benefit funds."  That section provides, "Whenever an employer has agreed with any employee to make payments to a health or welfare fund, pension fund or vacation plan, or such other plan for the benefit of the employee, or has entered into a collective bargaining agreement providing for such payments, the employer upon written request of the employee shall furnish such employee annually a statement indicating whether or not such payments have been made and for what periods."

II.    *Section 226(a) Does Not Encompass Payments to the Union Vacation Trust Fund*

Appellant contends Section 226(a) required respondent to specify on his wage statements the hours and rate of pay for the payments to the Union Vacation Trust Fund. He argues the payments were part of his "wages earned" because his wage statements list

6

dollar amounts for "Union Vacation" as a category of earnings, the amounts are included in "total earnings," and he was taxed on the payments.[6]  On the other hand, the same amounts are also listed as a "Union Vacation" deduction and, therefore, were not payments appellant ultimately received.  We conclude the payments are not within the scope of Section 226(a).

" 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.]  The well-established rules for performing this task require us to begin by examining the statutory language, giving it a plain and commonsense meaning.  [Citation.]  We do not, however, consider the statutory language in isolation; rather, we look to the statute's entire substance in order to determine its scope and purposes.  [Citation.]  That is, we construe the words in question in context, keeping in mind the statute's nature and obvious purposes.  [Citation.]  We must harmonize the statute's various parts by considering it in the context of the statutory framework as a whole.  [Citation.]  If the statutory language is unambiguous, then its plain meaning controls.  If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history."  (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1106–1107.)

As the Fourth District observed in *Soto*, *supra*, 4 Cal.App.5th at page 391, "[Section 226(a)] is highly detailed, containing nine separate categories that must be included on wage statements."  The issue in *Soto* was whether Section 226(a) required

---

[6] Appellant also refers in passing to section 226, subdivision (a)(9), which requires itemization of "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."  However, appellant does not argue that provision requires itemization of hourly rates that are not "wages."  As respondent points out, an interpretation of section 226, subdivision (a)(9) that encompasses the Union Vacation Trust Fund payments regardless of whether they are "wages" would apparently also require the listing of the hourly rates and hours for the CBA-mandated hourly payments to each of the other eight union trust funds.

7

the employer defendant to list the monetary value of accrued vacation time on wage statements. (*Soto*, at pp. 388, 390.) The court noted that Section 226(a) did not include "accrued paid vacation" as one of the categories of required information. (*Soto*, at p. 391.) This weighed against the plaintiff's argument, because "When a statute omits a particular category from a more generalized list, a court can reasonably infer a specific legislative intent not to include that category within the statute's mandate." (*Ibid.*, citing *Blankenship v. Allstate Ins. Co.* (2010) 186 Cal.App.4th 87, 94 ["By long-standing rule of statutory construction, the Legislature's omission of a term in a list of terms indicates the Legislature did not intend to include the omitted term, and we cannot add the term to the statute by judicial fiat."]; see also *Kunde v. Seiler* (2011) 197 Cal.App.4th 518, 531 [" ' "[I]f a statute enumerates the persons or things to be affected by its provisions, there is an implied exclusion of others . . . . It is an elementary rule of construction that the expression of one excludes the other. And it is equally well settled that the court is without power to supply an omission." ' "].) Similarly, the absence of a specific reference to payments to an employee benefit trust fund in Section 226(a) weighs against appellant's claim.

Appellant argues the lack of a specific reference to payments to an employee benefit trust fund is not important because the payments at issue fell within the general category of "wages." Section 200 defines "wages" to "include[] all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." That definition is not helpful in determining whether the payments at issue were wages because, although the definition makes clear the term encompasses payments by any method of calculation, it does not make clear whether amounts ultimately directed to a Taft-Hartley trust fund rather than to an employee are wages.

Certain California Supreme Court cases have broadly construed the term "wages." In *Suastez v. Plastic Dress–Up Co.* (1982) 31 Cal.3d 774, at pages 779–780, the California Supreme Court explained that "vacation pay is not a gratuity or a gift, but is, in effect, additional wages for services performed" and a "form of deferred compensation."

8

(See also *Prachasaisoradej v. Ralphs Grocery Co., Inc.* (2007) 42 Cal.4th 217, 228, italics omitted [" 'wages' or 'earnings' are the amount the employer has offered or promised to pay, or has paid pursuant to such an offer or promise, as compensation for that employee's labor"]; *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 [noting "wages" are defined to "include those benefits to which an employee is entitled . . . including money, room, board, clothing, vacation pay, and sick pay"].) Those cases are distinguishable. The issue in *Suastez* was when the right to vacation pay vests, for purposes of a provision of the Labor Code requiring payment of vested vacation time upon termination of employment. (*Suastez*, at p. 778.) The question in *Prachasaisoradej* was whether the defendant properly deducted expenses in determining store profits, which were then used as the basis for "supplementary incentive compensation" payments to employees. (*Prachasaisoradej*, at pp. 222–224, 236–237.) Finally, *Murphy* involved a Labor Code provision requiring the payment of an additional hour of pay to employees denied a " 'recovery period' " ("a cooldown period afforded an employee to prevent heat illness"). (§ 226.7.) The issue in the case was whether the payment constituted wages/premium pay or a penalty, which affected the statute of limitations period. (*Murphy*, at p. 1099.)

The "Union Vacation" payments at issue in the present case are fundamentally different. The payments were *not* "vacation pay" within the meaning of *Suastez*. (*Suastez*, *supra*, 31 Cal.3d at pp. 779–780.) Although each payment passed through his check, appellant does not allege he exercised any control over the funds, which were immediately deducted and (presumably) transferred to an "employer-financed trust[]" (*Great West, supra,* 19 Cal.App.4th at p. 1558, fn.2), the Union Vacation Trust Fund. Neither does he allege he could opt to alter or decline to make the contribution. Furthermore, although appellant had some expectation of benefits from the trust fund, he does not allege an entitlement to receive the entirety of the "Union Vacation" payments back from the trust fund. Finally, although respondent's obligation to make the payments arose from appellant's labor, appellant does not allege or present authority respondent owed the payments *to him*, rather than to the trust fund. The CBA authorizes the trust

9

fund to bring an action to collect any delinquent employer contributions. In contrast, *Suastez*, *Prachasaisoradej*, and *Murphy* each considered payments made to employees, subject to their control, and actually owed to them under the applicable agreements or statutes. The payments, therefore, were part of the compensation directly owed to the employees for their labor.[7] Thus, these cases provide no support for concluding the disclosure of payments made to a Taft-Hartley trust fund is governed by Section 226(a).

Section 227.5, which expressly provides for the disclosure of such payments, further undermines appellant's interpretation of Section 226(a). As noted previously, section 227.5 requires an employer to provide upon request an annual statement regarding payments "to a health or welfare fund, pension fund or vacation plan, or such other plan for the benefit of the employee," including payments required by a CBA. The contrast between section 227.5's express reference to "payments to a health or welfare fund, pension fund or vacation plan" and the absence of such an express reference in Section 226(a) suggests the omission was intentional. (See *Brown v. Kelly Broad. Co.* (1989) 48 Cal.3d 711, 725 (" 'It is a well recognized principle of statutory construction that when the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded.' "]; accord *Wasatch Property Management. v. Degrate* (2005) 35 Cal.4th 1111, 1118; *Porter v. Board of Retirement of Orange County Employees' Retirement System* (2013) 222 Cal.App.4th 335, 345.)

---

[7] *Soto* distinguished *Suastez* and *Murphy* on a different ground. *Soto* concluded the broad definition of "wages" was not determinative of the issue before it, because "unused vacation time does not become a *quantifiable* vacation wage until the employee separates from the employment." (*Soto*, *supra*, 4 Cal.App.5th at p. 391.) The court held Section 226(a) does not encompass the accrued value of vacation time because, although "[t]he employee has vested rights to paid vacation or vacation wages during the time of his employment, . . . these rights do not ripen and become an entitlement to *receive* the monetary value of the benefit *as wages* until the separation date." (*Id.* at p. 392.) The present case is not distinguishable on that ground: the amount of the payments to the Union Vacation Trust Fund *was* quantified, albeit without the hours and rate being specified.

There is a second way in which section 227.5 undermines appellant's interpretation of Section 226(a).  The "Union Vacation" payments are not the only payments to a Taft-Hartley trust fund mandated by the CBA for appellant's eventual benefit.  The CBA requires respondent to "pay hourly contributions for each hour paid for and/or worked" at specified hourly rates for eight additional union trust funds.  If the fact that appellant will benefit from the "Union Vacation" payments means they are wages, appellant fails to explain why the same cannot be said for some or all of the eight other union trust funds specified in the CBA.  For example, the CBA mandates a "Pension" fund hourly contribution of $8.96, and *Suastez* observed that "vacation pay is similar to pension or retirement benefits, another form of deferred compensation." (*Suastez*, *supra*, 31 Cal.3d at p. 780.)  Because appellant fails to justify treating *only* the Union Vacation Trust Fund payments as wages,[8] appellant's interpretation of Section 226(a) essentially renders section 227.5 surplusage.  (*Tuolumne Jobs & Small Business Alliance. v. Superior Court* (2014) 59 Cal.4th 1029, 1038 ["It is a maxim of statutory interpretation that courts should give meaning to every word of a statute and should avoid constructions that would render any word or provision surplusage."].)  If employers were required by Section 226(a) to list payments to Taft-Hartley trust funds on wage statements, the annual statements provided for by section 227.5 would provide an employee little to no additional information.

Finally, appellant argues adopting his interpretation of Section 226(a) would advance the purpose of the statute to " 'insure that employees are adequately informed of compensation received and are not shortchanged by their employers.' " (*Soto*, *supra*, 4

---

[8] The only distinction appellant offers is that he paid taxes on the "Union Vacation" payments, but he presents no reasoning why or authority that the treatment of the payments for federal taxation purposes is determinative.  The federal taxation rules apparently are responsible for the inclusion of the vacation trust fund payments, and not payments to the other Taft-Hartley trusts, on appellant's wage statements.  However, that does not justify treating *only* the payments to the Union Vacation Trust Fund as wages.  Absent some indication of legislative intent to the contrary, our interpretation of the meaning of "wages" as used in Section 226(a) is not dictated by federal taxation rules.

11

Cal.App.5th at p. 392, quoting Assem. Com. on Labor and Employment, Analysis of Sen. Bill No. 1255 (2011–2012 Reg. Sess.), italics omitted.) He argues, "An employee who receives 'Union Vacation' wages will have no idea whether the correct amount was paid to them, as the rate is not listed, nor are the applicable number of hours. Consequently, they will not know whether the tax they are paying is correct." At the outset, appellant is mistaken in asserting the wage statements he received provided him "no means of verifying that the 'Union Vacation' payment is the correct amount." The wage statements provided the information needed to verify the propriety of the payment amount, because dividing the totals listed for "Union Vacation" on each statement by the total number of hours worked shows that "Union Vacation" was paid at an hourly rate of $2.63, as required by the CBA. Thus, appellant's argument that "an employee has no means of determining whether the amount being paid to them for the line item is correct" is inaccurate.

More fundamentally, we reject appellant's suggestion that policy considerations permit this court to add to the statutorily required disclosures. While courts are required to construe wage statutes broadly in favor of employees, "this principle does not provide [courts] with the authority to rewrite applicable legislation." (*Soto*, *supra*, 4 Cal.App.5th at p. 393.) " 'The rules of statutory construction provide that " '[u]nder the guise of construction, a court should not rewrite the law, add to it what has been omitted, omit from it what has been inserted, give it an effect beyond that gathered from the plain and direct import of the terms used, or read into it an exception, qualification, or modification that will nullify a clear provision or materially affect its operation so as to make it conform to a presumed intention not expressed or otherwise apparent in the law.' " ' " (*Ibid.*) In *Soto*, the court concluded that whether disclosure of information regarding accrued vacation hours "should be required on a regular basis is a policy matter for the Legislature and/or the regulatory agencies, and not the courts." (*Ibid.*) Similarly, it is not

12

for this court to expand the required disclosures to include payments to Taft-Hartley trusts funds.[9]

Thus, the trial court properly sustained respondent's demurrer on the ground that appellant failed to state a claim for violation of Section 226(a), which also disposes of appellant's PAGA claim. (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 987 ["Recovery of civil penalties under [PAGA] requires proof of a Labor Code violation."].) Appellant does not suggest any way his complaint can be amended to state a claim, so the trial court did not err in sustaining the demurrer without leave to amend.[10]

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

---

[9] Appellant suggests confusion could arise if amounts employees are taxed on are not subject to Section 226(a) because "the amount the employee [was] taxed on would be different from listed earnings . . . It would be literally impossible for an employee to decipher their wage statement if there were 'ghost' payments and deductions not included in the calculations on the wage statements, but factored in to the final payment amount received by the employee." That scenario is one properly considered by the Legislature.

[10] LMRA preemption does not affect this court's jurisdiction because we resolve the present appeal on the basis of the statutory language, without interpreting any provision of the CBA. (*Burnside*, *supra*, 491 F.3d at pp. 1059–1060.) We need not and do not consider whether appellant's claims would be preempted if he argued the CBA provided support for his contention that the Union Vacation Trust Fund payments were wages. For example, appellant did not argue that the CBA treats the payments as wages or that the CBA gives him control over disposition of the payments. Instead, appellant argued, "Outside of stating that there is a Taft-Hartley trust fund, the CBA provides no guidance as to the nature of these payments, whether they are to be considered 'earnings', or how they should be listed on employee wage statements." We also need not consider any implications of the circumstance that Taft-Hartley trusts funds are governed by the Employee Retirement Income Security Act of 1974 (29 U.S.C.A. § 1001, et seq.). (*Amax Coal*, *supra*, 453 U.S. at pp. 328–334.)

13

_____

SIMONS, Acting P.J.

We concur.

_____

NEEDHAM, J.

_____

BRUINIERS, J.

(A148264)

14

Superior Court of the City and County of San Francisco, No. RG15780062, Hon. George C. Hernandez, Jr., Judge.

Diversity Law Group, Larry W. Lee, Nicholas Rosenthal; Polaris Law Group, William L. Marder for Plaintiff and Appellant.

Simpson, Garrity, Innes & Jacuzzi, Ronald F. Garrity and Sarah Lucas for Defendant and Respondent.