Filed 10/20/16

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LIDIA SOTO, | D069403 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2015-00017074-CU-OE-CTL) |
| MOTEL 6 OPERATING, L.P., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joel Wohlfeil, Judge. Affirmed.

Gaines & Gaines, Stephen H. Krumm and Daniel F. Gaines, for Plaintiff and Appellant.

Ogletree, Deakins, Nash, Smoak & Stewart, Spencer C. Skeen, Jennifer L. Santa Maria, and Sarah A. Williams for Defendant and Respondent.

Lidia Soto sued her former employer, Motel 6 Operating, L.P. (Motel), alleging

Motel violated Labor Code section 226, subdivision (a)[1] by failing to include the

monetary amount of accrued vacation pay in its employees' wage statements.  Soto filed

the action in her individual capacity and on behalf of all aggrieved workers under the

Private Attorney General Act of 2004 (PAGA).  (§ 2698 et seq.)

The court sustained Motel's demurrer without leave to amend.  We affirm.  Section

226(a) does not require employers to include the monetary value of accrued paid vacation

time in employee wage statements unless and until a payment is due at the termination of

the employment relationship.

FACTUAL AND PROCEDURAL SUMMARY

Soto worked for Motel from June 2012 through January 2015.  In May 2015, Soto

brought a representative PAGA action alleging a single cause of action under section

226(a).[2]  Soto alleged Motel violated section 226(a) by failing to provide its California

---

[1]    All statutory references are to the Labor Code; we omit the word subdivision when
referring to the statutory subparts.

[2]    Section 226(a) states:  "Every employer shall, semimonthly or at the time of each
payment of wages, furnish each of his or her employees, either as a detachable part of the
check, draft, or voucher paying the employee's wages, or separately when wages are paid
by personal check or cash, an accurate itemized statement in writing showing (1) gross
wages earned, (2) total hours worked by the employee, except for any employee whose
compensation is solely based on a salary and who is exempt from payment of overtime
under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare
Commission, (3) the number of piece-rate units earned and any applicable piece rate if
the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions
made on written orders of the employee may be aggregated and shown as one item, (5)
net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7)
the name of the employee and only the last four digits of his or her social security number

2

nonexempt employees with wage statements setting forth "all vacation and PTO (paid time off) wages accrued during the applicable pay period."  Soto sought statutory penalties and attorney fees.  (§ 2699(g)(1).)

Motel demurred, asserting that section 226(a) does not require employers to itemize the monetary value of vacation balances before the employment relationship is terminated.  Motel relied on the plain language of the statute, the language of related statutes (§§ 227.3, 227.5), federal and state case law, and a sample itemized wage statement contained on the Division of Labor Standards Enforcement (DLSE) website.

In opposing the demurrer, Soto argued that section 226(a) requires itemization of earned "wages" and California cases have recognized (in other contexts) that a "wage" includes *vacation pay*.  (See *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 (*Murphy*); *Suastez v. Plastic Dress-Up. Co.* (1982) 31 Cal.3d 774, 784 (*Suastez*).)  Soto emphasized the legal principle that vacation benefits are earned and become vested during the pay period when they accrue.  (See *Suastez, supra*, 31 Cal.3d at pp. 778-784.)  Soto additionally argued a vacation wage reporting requirement is supported by the strong public policy favoring timely pay for completed work.

---

or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee . . . .  The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. . . ."

After considering the arguments and taking judicial notice of the DLSE sample wage statement, the trial court sustained the demurrer without leave to amend. The court concluded "section 226(a) does not require a wage statement to include the value of vacation or PTO wages accrued and earned."

## I. *Review Standards*

On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the "reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) It "is error for a trial court to sustain a demurrer [if] the plaintiff has stated a cause of action under any possible legal theory." (*Ibid.*) We apply a de novo standard in reviewing the court's ruling sustaining the demurrer. (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501.)

## II. *Statutory Interpretation Principles*

The issue before us requires that we ascertain the legislative intent underlying section 226. (See *Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 567 (*Gattuso*).) In so doing, we first examine "the statute's words, giving them their ordinary and usual meaning and viewing them in their statutory context, because the statutory language is usually the most reliable indicator of legislative intent." (*Ibid.*)

"When the statutory language is ambiguous, a court may consider the consequences of each possible construction and will reasonably infer that the enacting legislative body intended an interpretation producing practical and workable results rather than one producing mischief or absurdity . . . . '[A] court's "overriding purpose" in

4

construing a statute is "to give the statute a *reasonable* construction conforming to [the Legislature's] intent. . . ." ' . . . . 'The court will apply common sense to the language at hand and interpret the statute to make it workable and reasonable.' " (*Gattuso, supra*, 42 Cal.4th at p. 567; accord, *Yohner v. California Dept. of Justice* (2015) 237 Cal.App.4th 1, 8.)

We independently determine the meaning of a statute. (*Ramos v. Garcia* (2016) 248 Cal.App.4th 778, 784.)

### III. *Analysis*

Section 226 requires "employers [to] provide accurate itemized statements of wages to their employees." (*Morgan v. United Retail Inc.* (2010) 186 Cal.App.4th 1136, 1143 (*Morgan*).) The employer must provide the wage statement to the employee "semimonthly or at the time of each payment of wages" and furnish the statement "either as a detachable part of the check . . . paying the employee's wages, or separately when wages are paid by personal check or cash." (§ 226(a).) The wage statement *must* contain the information specified in the statute. (*Heritage Residential Care, Inc. v. Division of Labor Standards Enforcement* (2011) 192 Cal.App.4th 75, 80*.*)

The Legislature enacted section 226 to ensure an employer "document[s] the basis of the employee compensation payments" to assist the employee in determining whether he or she has been compensated properly. (*Gattuso, supra*, 42 Cal.4th at p. 574; see *Morgan, supra*, 186 Cal.App.4th at p. 1145.) Section 226 "play[s] an important role in vindicating [the] fundamental public policy" favoring " ' "full and prompt *payment* of an

5

employee's earned wages. . . ." ' " (*Henry M. Lee Law Corp. v. Superior Court* (2012) 204 Cal.App.4th 1375, 1388, italics added.)

Soto contends section 226 requires the monetary amount of earned vacation pay to be listed on each itemized wage statement. Five years ago, a federal district court rejected the identical argument, finding that neither the statutory language nor the statutory purpose supports this requirement. (*Heinzman v. Home Depot U.S.A., Inc.* (U.S. Dist. Ct., C.D. Cal., Jan. 20, 2011, No. SACV 10-01827-CJC (RNBx)) 2011 WL 12817699.) We agree with the court's conclusion.

First, section 226(a) is highly detailed, containing nine separate categories that must be included on wage statements, and the code section does not identify accrued paid vacation as one of these categories. (See fn. 2, *ante*.) When a statute omits a particular category from a more generalized list, a court can reasonably infer a specific legislative intent not to include that category within the statute's mandate. (See *Blankenship v. Allstate Ins. Co.* (2010) 186 Cal.App.4th 87, 94.)

Soto contends the accrued value of a paid vacation benefit need not have been specifically identified because vacation pay falls within the definition of the "gross wages earned" and "net wages earned" statutory categories. (§§ 226(a)(1), (5); see fn. 2, *ante*.) Soto relies on language in California Supreme Court decisions recognizing that vacation pay is a form of a "wage[]." (See *Murphy, supra*, 40 Cal.4th at p. 1103 [noting "wages" are defined to "include those benefits to which an employee is entitled . . . including money, room, board, clothing, vacation pay, and sick pay"]; *Suastez, supra*, 31 Cal.3d at

6

p. 779 ["[V]acation pay is not a gratuity or a gift, but is, in effect, additional wages for services performed."].)

Soto's argument reflects a misunderstanding of the nature of an accrued vacation benefit under California law. Under section 227.3, if an employer provides for paid vacation, "all vested vacation shall be paid to [the employee] as wages at his final rate in accordance with" the employment contract or policy. In interpreting section 227.3 and applying "equity and fairness" principles, the California Supreme Court in *Suastez* held paid vacation is a form of *deferred* wages for services rendered, similar to a pension or retirement benefit. (*Suastez, supra*, 31 Cal.3d at pp. 780-781, 783-784.) Under this view, a proportionate right to a paid vacation vests as the labor is provided. (*Id.* at p. 784.) On termination, the employee must be paid for a pro rata share of his or her unused vacation time. (*Ibid.*)

Consistent with *Suastez,* the courts have recognized that although vacation time vests as labor is provided, unused vacation time does not become a *quantifiable* vacation wage until the employee separates from the employment. (*Church v. Jamison* (2006) 143 Cal.App.4th 1568, 1576-1577 (*Church*) ["termination of employment is the event that converts the employer's obligation to allow an employee to take vacation from work into the monetary obligation to pay that employee for unused vested vacation time," fn. omitted].) This principle is supported by section 227.3's language that "upon termination," vested vacation pay shall be paid to the employee "*as wages*," leading to the reasonable inference that before this time accrued vacation pay is not a "wage." (Italics added.)

7

Under these authorities, vacation pay cannot be fairly defined as "gross wages earned" or "net wages earned" under section 226(a)(1) or (a)(5) *until* the termination of the employment relationship. The employee has vested rights to paid vacation or vacation wages during the time of his employment, but these rights do not ripen and become an entitlement to *receive* the monetary value of the benefit *as wages* until the separation date. (*Church, supra*, at pp. 1576-1577, 1583; see *Suastez, supra*, 31 Cal.3d at p. 784.) Further, before separation, the *amount* of vacation pay to which the employee is entitled is not ascertainable. An employee is entitled to obtain the value of *unused* paid vacation at his or her "*final rate*." (§ 227.3, italics added.) Because the amount of unused vacation and an employee's final rate may change, an employee's accrued vacation balance depends on the particular circumstances at the employment termination date.

Additionally, even assuming the statutory term "wages" can be fairly defined to include "vacation pay," in interpreting a statute's plain meaning, a court should not focus solely on " ' "a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible." ' " (*Morgan v. Beaumont Police Department* (2016) 246 Cal.App.4th 144, 151 (*Morgan*).) The reference to "gross wages earned" and "net wages earned" (§ 226(a)(1), (5)) must be read in connection with section 226(a)'s directory language, which states that "at the time of each *payment of wages*," the employer must "furnish . . . an accurate itemized statement" of these *earned wages*. (Italics added.) This mandate requires the employer to "itemize[ ]" the constituent parts of the total amount to be paid to the

8

employee. (§ 226(a).) Because unused vacation pay is not owed to an employee and is not paid to the employee until the termination of the relationship, and the monetary value of the unused vacation pay cannot be determined until the termination date, the requirement that an employer identify earned "wages" logically does not extend to accrued vacation benefits.

This interpretation is also supported by section 226(a)'s statutory purpose, which is to *document* the *paid wages* to ensure the employee is fully informed regarding the calculation of *those wages*. As Soto recognizes, " 'The purpose of requiring greater wage stub information is to insure that employees are adequately informed of *compensation received* and are not shortchanged by their employers' " (quoting Assem. Com. on Labor and Employment, Analysis of Sen. Bill No. 1255 (2011-2012 Reg. Sess., italics added). Consistent with this purpose, an employer is required to identify only those statutory items that are part of the employee's current monetary compensation. The employer must provide the employee with an itemized statement identifying the specific wages being paid at the time of the payment (or at least semimonthly). (§ 226(a).) Until a vacation benefit is required to be paid, it need not be included in a wage statement under section 226(a).

In urging this court to adopt her interpretation of section 226(a), Soto argues the trial court's conclusion will "keep employees in the dark as to whether their employer has correctly computed and credited vacation pay and paid time off." However, there is nothing in the statutory language or its legislative history suggesting that the Legislature intended section 226 to set forth disclosure rules governing all parts of an

9

employer/employee relationship. The statute is directed at the contents of a wage statement pertaining to the specific component parts of the employee's current compensation. If an employer is not required to compensate an employee for unused vacation in a particular paycheck, there is no statutory duty to identify the monetary amount of the accrued vacation balance.

Soto contends we are required to construe wage statutes broadly in favor of employees. (See *Murphy, supra*, 40 Cal.4th at p. 1103.) We agree, but this principle does not provide us with the authority to rewrite applicable legislation to " 'conform to [an] appellant's view of what [the law] should be.' " (*Gatewood v. Board of Retirement* (1985) 175 Cal.App.3d 311, 317; see *In re G.Y.* (2015) 234 Cal.App.4th 1196, 1204.) "The rules of statutory construction provide that ' "[u]nder the guise of construction, a court should not rewrite the law, add to it what has been omitted, omit from it what has been inserted, give it an effect beyond that gathered from the plain and direct import of the terms used, or read into it an exception, qualification, or modification that will nullify a clear provision or materially affect its operation so as to make it conform to a presumed intention not expressed or otherwise apparent in the law." ' " (*Kleitman v. Superior Court* (1999) 74 Cal.App.4th 324, 334.) Whether disclosure regarding unused paid vacation information should be required on a regular basis is a policy matter for the Legislature and/or the regulatory agencies, and not the courts.[3]

_____

[3] Section 227.5 (relied upon by Motel) requires an employer to provide annual statements upon request regarding payments made "to a health or welfare fund, pension

10

In reaching our conclusions, we do not rely on the sample wage statement on the DLSE website. As Soto notes, the sample statement does not address the issue of vacation pay, and therefore it is not helpful on the issue before us. We additionally note that Soto's complaint alleged a section 226(a) violation based also on Motel's failure to specify "paid time off" on the wage statements. Soto does not suggest there is any different analysis regarding this benefit, and therefore we do not separately discuss the issue. Our conclusions apply equally to the "paid time off" allegations.

## DISPOSITION

Judgment affirmed. Respondent to recover its costs on appeal.


HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


NARES, J.

---

fund or vacation plan or such other plan, for the benefit of the employee." This provision does not appear to be directly applicable to the issue here.