Filed 7/21/22  Staublein v. Wells Fargo Bank N.A. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| AMY STAUBLEIN, | |
| Plaintiff and Appellant, | E076288 |
| v. | (Super. Ct. No. CIVDS1712267) |
| WELLS FARGO BANK N.A., | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  David S. Cohn, Judge.  Affirmed.

Haines Law group, Paul K. Haines, Fletcher W. Schmidt and Andrew J. Rowbotham; Ehlert Hicks, Allison Ehlert and Scotia Hicks, for Plaintiff and Appellant.

Kading Briggs, Glenn L. Briggs, Theresa A. Kading and Sarah Y. Oh, for Defendant and Respondent.

1

I.

INTRODUCTION

Amy Staublein worked at Wells Fargo's San Bernardino call center for over a decade.  During the last two years of her employment, she earned a "language differential pay increase" of 5 percent more than her base pay because she speaks Mandarin fluently and used it on the job.  Staublein brought this class and representative action against Wells Fargo alleging that Wells Fargo's wage statements for employees who earn the language differential pay increase violate Labor Code section 226, subdivision (a)(9) (section 226(a)(9))[1] because they do not separately itemize the employees' base pay rates and language-differential pay.

The trial court disagreed, granted summary judgment to Wells Fargo, and denied Staublein's cross-motion for summary judgment.  Staublein appeals, and we affirm.

II.

FACTUAL AND PROCEDURAL BACKGROUND

Wells Fargo pays certain qualifying employees a language differential pay increase equal to 5 percent of the employee's hourly rate.  To qualify for the language-differential pay, the employee must work "in a call center-dedicated language queue" or "use a second language 50% or more of the time at work."  The employee must also pass a language exam and their manager must approve a language differential pay increase.

---

[1]  All further statutory references are to the Labor Code.

2

The language-differential pay may be discontinued at any time if an employee no longer qualifies for it (e.g., if the employee no longer uses a second language on the job).

When an employee is approved for language-differential pay, the 5 percent increase applies to all of the employee's hours worked, including straight time, overtime, holiday time, and paid-time off. However, the language-differential pay increase does not apply to parental leave pay or "critical caregiving leave" pay.

Wells Fargo employees are paid every two weeks. Their wage statements (which Wells Fargo calls "'pay vouchers'") do not separately itemize the language-differential pay rate. Instead, the statements lists only the "Regular Pay" rate, which incorporates the 5 percent differential pay increase. At the bottom of the statements' "Earnings" table, there is a line, "*Lang Diff incl in Pay," which identifies the total amount of language-differential pay the employee earned during the pay period. The statements thus do not show either the employee's hourly base rate or the hourly language differential pay increase.

At all relevant times, Staublein's hourly rate was $22.273855 per hour. This figure included the 5 percent language-differential pay increase that Staublein earned for speaking Mandarin fluently. Staublein thus earned $22.273855 per hour for every hour she worked during the relevant time period, so all of her wage statements from that time stated that her "Regular Pay" rate was $22.273855.

After leaving Wells Fargo, Staublein filed a class action on behalf of herself and other similarly situated Wells Fargo employees who earn the language-differential pay

3

increase as well as a claim under the Labor Code Private Attorneys General Act of 2004 (PAGA; § 2698 et seq.). Staublein alleges that Wells Fargo's wage statements for its employees who earn language-differential pay violate section 226(a)(9)[2] because they do not separately itemize the employees' base pay rate and language-differential pay rate, but instead provide only a single, "blended" hourly rate. Staublein sought over $13.5 million in statutory damages (see § 226(a), subd. (e)(1), 2699(a), (f)) and attorney's fees and costs.

After the trial court certified a class, the parties filed cross-motions for summary judgment. The trial court found that Wells Fargo's wage statements did not violate section 226(a)(9), granted Wells Fargo's motion for summary judgment, denied Staublein's motion, and entered judgment for Wells Fargo. Staublein timely appealed.

III.

DISCUSSION

As the trial court correctly observed, the dispositive issue in this case is whether Wells Fargo's wage statements comply with section 226(a)(9). We conclude that they do.

---

[2] Section 226(a)(9) provides in relevant part that employers must furnish employees with "accurate itemized statement in writing showing . . . (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

"A party moving for summary judgment bears the burden of persuasion there is no triable issue of material fact and is entitled to judgment as a matter of law.  A defendant satisfies this burden by showing one or more elements of the cause of action in question cannot be established or there is a complete defense to that cause of action.  If the defendant meets this initial burden, the opposing party must then make a prima facie showing of the existence of a triable issue of material fact.  [Citation.]  [¶]  We review the denial of a motion for summary judgment de novo.  [Citation.]  We strictly construe the moving party's affidavits and liberally construe the opposing party's affidavits.  We accept as undisputed facts only those portions of the moving party's evidence that are not contradicted by the opposing party's evidence.  (*City of San Diego v. Superior Court* (2006) 137 Cal.App.4th 21, 25.)  Thus, "[w]hen deciding whether to grant summary judgment, the court must consider all of the evidence set forth in the papers (except evidence to which the court has sustained an objection), as well as all reasonable inferences that may be drawn from that evidence, in the light most favorable to the party opposing summary judgment." (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 467.)

"In interpreting section 226, we apply well-settled rules of statutory construction. [Citation.]  '[O]ur primary task is determining legislative intent.  [Citation.]  In doing so, we "look first to the words of the statute, 'because they generally provide the most reliable indicator of legislative intent.'"  [Citations.]  Where a statutory term "is not defined, it can be assumed that the Legislature was referring to the conventional

definition of that term." [Citations.] We thus give the words in a statute "their plain and commonsense meaning." [Citation.] "Furthermore, a particular clause in a statute must be read in harmony with other clauses and in the context of the statutory framework as a whole." [Citation.] Additionally, "statutes governing conditions of employment are to be construed broadly in favor of protecting employees."' [Citation.]" (*General Atomics v. Superior Court* (2021) 64 Cal.App.5th 987, 994.) Because the facts are undisputed, our interpretation of section 226(a)(9) is de novo. (*Morgan v. United Retail Inc.* (2010) 186 Cal.App.4th 1136, 1142.)

Section 226(a) requires employers to provide accurate itemized wage statements to their employees. (*Morgan v. United Retail, Inc.*, *supra*, 186 Cal.App.4th at p. 1143.) The statute's purpose is "to ensure an employer 'document[s] the basis of the employee compensation payments' to assist the employee in determining whether he or she has been compensated properly." (*Soto v. Motel 6 Operating LP* (2016) 4 Cal.App.5th 385, 390.) Among other things, section 226(a)(9) mandates wage statements itemizing "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

Staublein contends Wells Fargo's wage statements violate this requirement because they do not itemize employees' language-differential pay rate separately from their base pay rate. We disagree.

6

Wells Fargo employees who have earned the language differential pay increase are paid at the same rate for all hours worked so long as the increase applies. After Staublein earned the language differential pay increase, she was paid $22.273855 per hour of straight time, overtime, holiday time, and paid-time off. Her "applicable hourly rate[] in effect" at all relevant times was therefore $22.273855 per hour—not her base pay rate or her language-differential pay rate. Because it undisputed that all of Staublein's relevant wage statements accurately stated that her "Regular Pay" rate was $22.273855, they complied with section 226(a)(9).

In Staublein's view, Wells Fargo had to separately itemize her language-differential pay and her base pay under section 226(a)(9). But neither of those was an "hourly rate in effect." We agree with Wells Fargo that the language differential pay increase is effectively an across-the-board pay raise, not a discrete hourly rate that had to be itemized. Once a Wells Fargo employee earns the language differential pay increase, their pay is increased by 5 percent for all hours worked. Staublein was paid an hourly rate of $22.273855, which accurately reflected the 5 percent pay increase from her base pay.

Staublein argues language-differential pay should not be viewed as a raise for five reasons. We find none of them persuasive.

First, Staublein points to an internal Wells Fargo document explaining the language differential pay increase and notes that it is not described as a raise, but rather as an "enhancement 'calculated as a percentage of base pay,'" which is then listed as a "separate line item" on wage statements. Staublein also notes that a Wells Fargo representative testified that language-differential pay is an "additional payment" and base pay is the hourly rate employees earn without differentials or additions. But that representative went on to explain the language differential (5% of hourly base pay) is added "to the hourly rate to come up with the regular rate of pay . . . for that pay period."

Thus, whether the language differential increase is described as an "enhancement" or an "additional payment" or a "raise," the effect is the same. Wells Fargo employees who earn the language differential pay increase earn 5 percent more per hour for every qualifying hour, whether it is straight time, holiday time, or paid time off. That rate is the employee's "hourly rate[] in effect," not their base pay rate or language-differential pay rate. (§ 226(a)(9).)

Second, Staublein argues the language differential pay increase should not be viewed as a pay raise but rather as a separate hourly rate because the increase could be eliminated if the employee no longer qualifies for it. This is true of any across-the-board pay raise. An employee could earn a 5 percent pay raise for any given reason and then lose the raise the next pay period (or vice versa). Staublein does not cite, and we cannot locate, any authority that suggests employers must provide wage statements itemizing an

8

employee's base rate and any applicable pay increase that could be eliminated in the future.

Third, Staublein argues the language differential pay increase is a separate hourly rate because an employee's "blended" rate (base pay plus language-differential pay) is different from the hourly rate of pay Wells Fargo employees receive for parental leave and critical caregiving leave. But section 226(a)(9) requires employers to itemize on wage statements the "hourly rates in effect during the pay period and the corresponding number of hours *worked* at each hourly rate." Wells Fargo argues, and Staublein does not dispute, that paid leave does not constitute "hours worked" under section 226(a)(9).[3] We agree. The hourly rates Wells Fargo employees are paid for parental and critical caregiving leave are thus irrelevant for determining the hourly rates for "hours worked" that Wells Fargo must itemize on its wage statements under section 226(a)(9).

Fourth, Staublein argues Wells Fargo's wage statements violate section 226(a)(9) because employees like her who earn language-differential pay "'cannot promptly and easily determine from the wage statement[s] alone'" the amount of their base pay and language-differential pay. Again, section 226(a)(9) required Wells Fargo to itemize only the "hourly rates in effect during the pay period." The "blended" rate Wells Fargo uses

_____

[3] In her reply brief, Staublein concedes that paid parental and caregiving leave need not be itemized on Wells Fargo's wage statements under section 226(a)(9). Staublein explains that she raised the issue in her opening brief "to make clear that, contrary to Wells Fargo's representation in the trial court, the blended rate is not the 'only hourly rate for all purposes'" because its employees are paid for parental and critical caregiving leave at rates that differ from their regular rate of pay.

satisfies this requirement because employees who earn language-differential pay earn the same hourly rate for all applicable hours. After an employee has earned the language differential pay increase, they can easily determine whether their wage statements accurately reflect their "applicable hourly rate[]" ("Regular Pay"). In Staublein's case, her relevant wage statements accurately and clearly identified her Regular Pay rate of $22.273855. She can therefore "promptly and easily determine" her "hourly rate[] in effect during the pay period" from her wage statements "without reference to other documents or information." (§ 226, subd. (e)(2)(C).)

Finally, Staublein argues that section 226(a)'s history and public policy support an interpretation of section 226(a)(9) that would require Wells Fargo to separately itemize employees' base pay rate and language-differential pay rate. We decline to read section 226(a)(9) in a manner unsupported by its text. As explained above, Wells Fargo's wage statements comply with section 226(a)(9) as written. We lack the authority to rewrite section 226(a) to add wage statement requirements that the Legislature did not contemplate. (*Soto v. Motel 6 Operating, L.P.* (2016) 4 Cal.App.5th 385, 393 ["Whether disclosure regarding unused paid vacation information should be required on a regular basis [under section 226(a)] is a policy matter for the Legislature and/or the regulatory agencies, and not the courts."].)

For the foregoing reasons, we conclude Wells Fargo's wage statements comply with section 226(a)(9). As a result, Staublein's class action claim under section 226(a)(9) fails, as does her derivative PAGA claim, so we need not consider the parties' remaining

10

arguments.  (See *Iskanian v. CLS Transp. L.A., LLC* (2014) 59 Cal.4th 348.)  The trial court therefore properly granted summary judgment to Wells Fargo and denied Staublein's motion for summary judgment.

## IV.

## DISPOSITION

The judgment is affirmed.  Wells Fargo may recover its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

SLOUGH
J.