*SEE DISSENTING OPINION ATTACHED*

Filed 11/22/24  Delgado v. Taylor Farms California CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JOSE DELGADO,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>TAYLOR FARMS CALIFORNIA, INC.,<br><br>    Defendant and Respondent. | H049783<br>(Monterey County<br>Super. Ct. No. 18CV001381) |

Plaintiff Jose Delgado challenges the trial court's entry of judgment in favor of his former employer, Taylor Farms California, Inc. (Taylor Farms), on his representative claim under the Labor Code Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.) and certified class claim for alleged violations of a Labor Code provision requiring an employee's rate of pay and hours worked to be itemized with each regular paycheck.  (Lab. Code, § 226, subd. (a)(9); unspecified statutory references are to this code.)  For the reasons explained here, we will affirm the judgment.

## I.    TRIAL COURT PROCEEDINGS

Plaintiff is a former Taylor Farms employee who sued Taylor Farms in 2018.  The operative second amended complaint states various class and representative claims, including a cause of action for violations of section 226, subdivision (a).  Plaintiff alleged Taylor Farms had failed to provide accurate itemized wage statements to its employees.

At issue in the wage statement claim was a form of pay known as "FS Incentive OT."  Employees were occasionally paid flat-sum "incentive" bonuses if they met certain

production goals. Incentive bonuses were issued separately from the employees' regular paychecks. The bonus paycheck consisted of the incentive bonus itself and an additional amount of "FS Incentive OT" pay based on the number of hours worked by the employee during the relevant pay period. FS Incentive OT appeared as its own line item on the bonus wage statements, but no corresponding hourly rate was listed.

A trial was held on plaintiff's claim that Taylor Farms violated section 226, subdivision (a)(9) by failing to list an hourly rate for FS Incentive OT pay on the bonus wage statements. The trial court found that FS Incentive OT pay "was for the same start and end calendar dates pay period as the regular paycheck" but "was not based on an hourly rate and … the rate which was used was not in effect during the pay period when hourly rates were used to compute the amount of the regular paycheck."

Based on its findings, the court concluded Taylor Farms did not violate section 226, subdivision (a)(9)'s requirement that "all applicable hourly rates in effect during the pay period" appear on an accurate itemized wage statement. The court further ruled that any violation would not have subjected Taylor Farms to civil penalties under section 226.3 (which provides penalties where an employer violates § 226, subd. (a) and fails to provide the employee with a " 'wage deduction statement' " or to keep certain required records). It entered judgment in favor of Taylor Farms on the class and PAGA claims for alleged violations of section 226, subdivision (a)(9). Plaintiff's appeal is limited to that judgment.

## II.    DISCUSSION

Plaintiff argues the trial court's ruling that Taylor Farms did not violate section 226, subdivision (a)(9) is inconsistent with its finding that the bonus paychecks

2

covered the same pay periods as the employees' regular paychecks. We see no error or inconsistency.[1]

Trial court decisions are presumed correct and the appealing party has the burden to affirmatively show error. (*Lennane v. Franchise Tax Bd.* (1996) 51 Cal.App.4th 1180, 1189.) When reviewing a judgment based on a statement of decision following a bench trial, we review questions of law de novo, including the interpretation and application of statutes. We review the trial court's findings of fact for substantial evidence. Under that deferential standard of review, "findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.)

Under section 226, subdivision (a), employers "shall furnish to their employee … an accurate itemized statement in writing showing … all applicable hourly rates in effect

---

[1] We reach this argument even though plaintiff's appellate briefing does not address the portion of the trial court's decision relating to the applicability of civil penalties under section 226.3. We agree with Taylor Farms that plaintiff has therefore forfeited any issue as to the penalties prescribed by that statute. (See *Gunther v. Alaska Airlines, Inc.* (2021) 72 Cal.App.5th 334, 353–356.) Plaintiff had requested section 226.3 penalties of $250 per employee per alleged violation. Although the trial court ruled section 226.3 did not apply, a different statute (§ 2699) provides for default PAGA penalties of $100 per employee for an initial violation when no other penalties are applicable. (§ 2699, subd. (f)(2); see *Gunther*, at pp. 355–356.) Because plaintiff could recover those lesser penalties for violations to which section 226.3 does not apply—and he could obtain other relief through his class claim even if PAGA penalties were not available at all—we will review the trial court's conclusion that no violation occurred.

Section 226, subdivision (e)(1), allows individual employees to recover up to $4,000 in penalties for knowing and intentional violations that cause injury. Taylor Farms argues those penalties are not recoverable here because any violation caused no injury and was not knowing and intentional. Even assuming Taylor Farms is correct on both points, plaintiff could still be "entitled to remedies consisting of injunctive relief, costs, and reasonable attorney's fees" if he demonstrated a violation of section 226, subdivision (a). (*Naranjo v. Spectrum Security Services, Inc.* (2024) 15 Cal.5th 1056, 1074; see § 226, subd. (h).) The remedies requested in the second amended complaint include costs and attorney's fees.

during the pay period and the corresponding number of hours worked at each hourly rate by the employee" during the pay period. The disputed issue is whether FS Incentive OT was based on an hourly rate in effect during the relevant pay period. Relying on the trial court's factual finding that the bonus paychecks covered the same pay periods as the regular paychecks, plaintiff asserts FS Incentive OT must therefore be based on an hourly rate in effect during those concurrent periods. Taylor Farms notes that the "fictional hourly rate" used to calculate FS Incentive OT pay varies from pay period to pay period, and cannot be calculated until *after* each pay period ends. It argues that such a rate was therefore not "in effect during the pay period" and thus need not be displayed on the bonus wage statement.

The apparent purpose of FS Incentive OT is compliance with the requirement of section 510, subdivision (a) that overtime pay be calculated by applying a multiplier to "the regular rate of pay for an employee." "Regular rate of pay, which can change from pay period to pay period, includes adjustments to the straight time rate, reflecting, among other things, shift differentials and the per-hour value of any nonhourly compensation the employee has earned." (*Alvarado v. Dart Container Corp. of California* (2018) 4 Cal.5th 542, 554 (*Alvarado*).) "In other words, for the limited purpose of calculating the overtime pay rate, a flat-sum bonus must be *treated as if* it were earned on a per-hour basis throughout the relevant pay period, augmenting the employee's other hourly wages." (*Id.* at p. 562.)[2] Although a bonus must be *treated* as having been earned on an

---

[2] This appeal does not present the issue of whether Taylor Farms compensated its employees properly under section 510. We therefore do not ascribe any significance to the similarity of the method used by Taylor Farms to calculate the "hourly rate" for FS Incentive OT—dividing the amount of the incentive bonus by the total number of hours worked by the employee during the pay period, then multiplying by 0.5 (for overtime) or 1.0 (for double time)—to a method rejected by the California Supreme Court in *Alvarado*, *supra*, 4 Cal.5th at p. 549. In *Alvarado*, which involved an attendance bonus, the Supreme Court deemed the proper denominator to be the number of *nonovertime* hours worked rather than the *total* number of hours worked. (*Ibid.*) The Supreme Court

(*Continued*)

4

hourly basis for that limited purpose, it does not necessarily follow that the resulting overtime was *actually* earned based on an hourly rate in effect during the relevant pay period.

In *Magadia v. Wal-Mart Associates, Inc.* (9th Cir. 2021) 999 F.3d 668, the Ninth Circuit considered the applicability of section 226, subdivision (a)(9) to retroactive overtime adjustments issued in conjunction with quarterly bonuses. It distinguished such adjustments from "ordinary overtime pay with a corresponding hourly rate." (*Magadia*, at p. 681.) The Ninth Circuit explained that, unlike ordinary rates of overtime pay, "the supposed 'hourly rate' for the adjusted overtime pay 'is a fictional hourly rate calculated after the pay period closes in order to comply with the Labor Code section on overtime'—'[i]t appears as part of the calculation for an overtime bonus and then disappears, perhaps never to be seen again.' " (*Ibid.*) The requirement that a wage statement show "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee" (§ 226, subd. (a)(9)), as the Ninth Circuit interpreted it, "does not apply to an artificial, after-the-fact rate calculated based on overtime hours and rates from preceding pay periods that did not even exist during the time of the pay period covered by the wage statement." (*Magadia*, at p. 681.) The result in *Magadia* is also consistent with unpublished California appellate decisions which, although lacking precedential value, reflect existing practice under California law. (*Id.* at p. 681, fn. 12.)

We are persuaded by the Ninth Circuit's reasoning in *Magadia* and adopt it as our own on this record. In doing so, however, we recognize the overtime adjustments at issue in *Magadia* covered multiple pay periods whereas the FS Incentive OT here was generally issued for each individual pay period. Plaintiff notes that distinction, but he does not explain why it should lead to a different result. The trial court found the bonus

stated in a footnote that other types of bonuses (including production bonuses) may require a different analysis (*id.* at p. 561, fn. 6).

paychecks were issued separately from the regular paychecks in part because "the information necessary to know if the production goals triggering FS incentive OT pay were met was not known at the time the regular paycheck amounts were computed"—and apparently could not have been known until after the close of the pay period. Although the Taylor Farms incentive bonuses were issued more regularly than the quarterly bonuses in *Magadia*, the associated overtime payments are analogous in that both are after-the-fact adjustments that are not based on an hourly rate in effect during the relevant pay period.

Plaintiff points out that certain other information required to be listed on a wage statement, such as the number of hours worked by an employee (§ 226, subd. (a)(2)), is also not known with certainty until the close of the pay period. But in plaintiff's example of an employee who works until 11:59 p.m. on the final day of a pay period, the employee's total hours are known as soon as the pay period ends at midnight. There is no suggestion that an hourly rate for FS Incentive OT could be calculated at that time. The trial court therefore found incentive bonuses were based on information not available by the end of the pay period, sometimes requiring multiple days to ascertain through investigation or laboratory testing. And while the number of hours worked by an employee must always be shown on a wage statement unless unrelated exceptions apply (§ 226, subd. (a)(2)), "applicable hourly rates" need only be shown if they were "in effect during the pay period" (§ 226, subd. (a)(9)). Interpreting section 226, subdivision (a)(9) to apply to rates calculated only after the fact in order to comply with section 510—using information that could not be known until some time after the end of the pay period— would render the qualifying phrase "in effect during the pay period" mere surplusage. We will not add to the statute requirements beyond those included by the Legislature. (*Soto v. Motel 6 Operating, L.P.* (2016) 4 Cal.App.5th 385, 391–393.)

As plaintiff has not advanced a convincing alternative interpretation of section 226, subdivision (a)(9), we will affirm the judgment in favor of Taylor Farms on the class and representative wage statement claims.

## III.    DISPOSITION

The judgment is affirmed.  In the interest of justice, the parties shall bear their own costs on appeal.

_____

Grover, Acting P. J.


**I CONCUR:**


_____

Bromberg, J.


H049783
*Delgado v. Taylor Farms California, Inc.*

Lie, J., Dissenting:

In California, an employee's overtime rate is determined using the employee's "regular rate of pay." (Lab. Code, § 510, subd. (a).[1]) The regular rate in turn is determined using the employee's standard rate of pay, as adjusted by "the per-hour value of any nonhourly compensation the employee has earned," such as the production bonuses at issue here. (*Alvarado v. Dart Container Corp. of California* (2018) 4 Cal.5th 542, 554 (*Alvarado*).) Because of these potential adjustments to the standard rate, the regular rate of pay may change from pay period to pay period. (*Ibid*.) Consequently, so too may the overtime rate.

Beyond paying proper compensation under section 510, California employers must provide accurate itemized statements showing "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate." (§ 226, subd. (a)(9).) When an employee works overtime, the overtime rate is among the applicable hourly rates that an employer must accurately report on the wage statement. (*General Atomics v. Superior Court* (2021) 64 Cal.App.5th 987, 996, 998 (*General Atomics*).) "The core purpose of section 226 is 'to ensure an employer "document[s] the basis of the employee compensation payments" to assist the employee in determining whether [they have] been compensated properly.' " (*Ward v. United Airlines, Inc*. (2020) 9 Cal.5th 732, 752; see also *Soto v. Motel 6 Operating, L.P.* (2016) 4 Cal.App.5th 385, 392, quoting Assem. Com. on Labor & Employment, Analysis of Sen. Bill No. 1255 (2011–2012 Reg. Sess.) as amended May 15, 2012, p. 3; *General Atomics*, at p. 994.) And the California Supreme Court has instructed that "the state's labor laws are to be liberally construed in favor of worker protection." (*Alvarado*, *supra*, 4 Cal.5th at p. 562; see also *Troester v. Starbucks Corp.* (2018) 5 Cal.5th 829, 839.)

---

[1] Undesignated statutory references are to the Labor Code.

The majority follows *Magadia v. Wal-Mart Associates, Inc.* (9th Cir. 2021) 999 F.3d 668 (*Magadia*) to conclude that an "applicable hourly rate[]" like Taylor Farms' "FS Incentive OT" is not " 'in effect during [a] pay period' " because it is determined only at or after the pay period concludes. (Maj. opn., *ante*, at p. 4.) In *Magadia*, a panel of the United States Court of Appeals for the Ninth Circuit reversed the district court's judgment awarding damages and penalties under section 2699. (*Magadia*, at p. 672.) The appellate court combined dictionary definitions of "in effect" and "during" to hold that section 226, subdivision (a)(9) (section 226(a)(9)) "does not apply to an artificial, after-the-fact rate calculated based on overtime hours and rates from preceding pay periods that did not even exist during the time of the pay period covered by the wage statement." (*Magadia*, at p. 681.)

With respect, I do not consider *Magadia*'s gloss on section 226(a)(9) to be consonant with the text, purpose, and precedential interpretations of California's worker protections. It seems plain to me from the text that an overtime rate is "in effect during the pay period" for which the rate is effective. The majority reasons that because this phrase qualifies the "*applicable* hourly rates" to be reported, my interpretation makes the "in effect" qualifier surplusage. (Maj. opn., *ante*, at p. 6, italics added.) But I read the "applicable" qualifier as differentiating between the hourly rates to be reported within a pay period—potentially multiple straight time rates (see, e.g., *General Atomics*, *supra*, 64 Cal.App.5th at p. 995), as well as overtime and double-time rates (see *id*. at p. 998 [noting the wage statements' inclusion of both the statutory regular rate of pay and the overtime rate as a premium "show[ed] both the applicable hourly rates and the total number of hours worked at each"])—rather than between the ongoing adjustments to any one of these rates from pay period to pay period according to nonhourly compensation earned. I submit that my reading gives effect to both qualifiers.

Nor do I agree with the *Magadia* court's implication that the time or complexity of ascertaining nonhourly compensation and its hourly value supports narrowly construing

section 226(a)(9) in favor of employer protection. (Compare *Alvarado*, *supra*, 4 Cal.5th at pp. 561–562 with *Magadia*, *supra*, 999 F.3d at p. 681; see also maj. opn., *ante*, p. 6.) The Labor Code only requires employers to issue wage statements "semimonthly *or* at the time of each payment of wages" (§ 226, subd. (a), italics added), and it does not require employers to pay wages immediately upon the close of the pay period (§ 204, subd. (a)). The Labor Code is not so inflexible that it prevents an employer from taking the necessary time to accurately calculate the regular rate based on all relevant compensation earned during a pay period before accurately reporting an employee's overtime rate. If the standard rate of pay is susceptible of adjustment based on nonhourly compensation, the regular rate (and thus the overtime rate) is necessarily established retrospectively, after the pay period is complete. And the operative language is "*in effect* during," not "known" or "calculable" during the affected pay period.

Rather, I believe that *Magadia*'s narrow construction of section 226(a)(9) renders the statutory protection useless in precisely those circumstances where the overtime rate is most opaque, the utility of forthright itemization is highest, and the worker's reverse-engineering of the rate based on historical information is most laborious. (See *Magadia*, *supra*, 999 F.3d at p. 672 [exempting from § 226(a)(9) the average overtime rate adjustment derived from a quarterly bonus spanning six pay periods].) Interpreting the statute to permit wage statements that inaccurately report that the overtime rate as 1.5 times the straight time rate rather than 1.5 times the regular rate (cf. *Alvarado*, *supra*, 4 Cal.5th at p. 554) impedes section 226, subdivision (a)'s " 'core purpose' " of " ' "ensur[ing] an employer 'document[s] the basis of the employee compensation payments' to assist the employee in determining whether he or she has been compensated properly." ' " (*General Atomics*, *supra*, 64 Cal.App.5th at p. 994.)

Because I would reverse the judgment and remand the matter for the trial court to consider in the first instance Taylor Farms' alternative arguments, I respectfully dissent.

3

_____
LIE, J.

*Delgado v. Taylor Farms California, Inc.*
H049783